This civilian pay case comes before the court on defendant’s motion for summary judgment. Plaintiff, a former Treasury Department employee and a veteran’s preference eligible with 30 years of Government service, seeks back pay and reinstatement to his former position from which he retired on April 10, 1976. He claims that his retirement was involuntary because it was the result of wrongful Government conduct amounting to coercion, duress, time pressure, and intimidation, and, further, that his proposed transfer, which resulted in retirement because he found the transfer unacceptable, would have resulted in a reduction in rank which could not have occurred except after compliance with certain statutory procedural safeguards which were denied to plaintiff. We grant defendant’s motion and dismiss the petition.
*688 At the time of his retirement, plaintiff had been the national bank examiner in charge of the Orlando, Florida, subregion, No. 6, of the Comptroller of the Currency, a bureau of the Department of the Treasury. As examiner in charge of the Orlando subregion, plaintiff supervised 10 other examiners in an area of 45 national banks.
Plaintiff was called to a meeting in Atlanta, Georgia, with the Regional Administrator of the Comptroller of the Currency, on February 25, 1976. At that meeting he was told his performance in his Orlando position lacked efficiency, but that he would be transferred to another position in Atlanta at the same grade and pay. The new position would be one without supervisory responsibilities over other employees and would be that of a senior financial analyst of banks and bank holding companies. Plaintiff was told that if the transfer was not acceptable to him he could retire, and he was advised what his retirement benefits would be. He was also told that if he retired his application therefor could be processed in 2 days, which would entitle him to a pending cost-of-living adjustment.
Plaintiff pointed out that his performance evaluations had won him above-average ratings, that he had not been criticized by other regional administrators, and thus sought to rebut his alleged deficiencies. He also stated that he and his wife were responsible for the care of his mother-in-law, who suffered from a heart condition and needed to remain in Florida for her health. He sought time to consult with his wife and was told that he could call back on the matter later in the day. Upon returning home, however, plaintiff found that his mother-in-law had suffered a heart seizure and was hospitalized. He so informed the Regional Administrator on that day and asked to be allowed to stay in Orlando in a subordinate position. The Administrator told plaintiff that they would discuss his problems later and in a week called back rejecting plaintiffs request to stay in Orlando in a subordinate status, informing plaintiff again that he had an important job for him in Atlanta at no loss of grade or pay. Plaintiff then accepted the transfer, effective April 5, 1976.
Thereafter, plaintiff received a memorandum of the February 25 conversation which apparently contained *689 criticisms of his work not previously discussed. This caused plaintiff to telephone the Administrator to discuss the alleged deficiencies, and to tell the Administrator that he, plaintiff, intended to retire instead of transferring to Atlanta. Plaintiff submitted his application for retirement on March 20 to become effective April 10, 1976.
Two weeks later, on April 23, plaintiff requested cancellation of his application for retirement, apologizing for the inconvenience which his family problems had caused. That letter was received by the Regional Administrator’s office on April 29, 1976. On that date the Administrator attended a luncheon in Orlando at which he presented plaintiff with a service award. Plaintiff did not mention his request to withdraw his retirement notice, which had been effective since April 10. He did ask the Administrator for leave to give him as a job reference. The Administrator returned to his office and found plaintiffs request to cancel his retirement notice. By letter of May 4, 1976, to plaintiff, the Administrator recalled plaintiffs job reference request at the luncheon and stated his assumption that plaintiff had elected to remain retired. Plaintiff did not respond to this letter.
About a year later, on May 5, 1977, plaintiff appealed to the Federal Employee Appeals Authority (FEAA), which, on November 15, 1977, denied his appeal in a written opinion after a hearing. Plaintiff did not seek review by the Appeals Review Board of the Civil Service Commission. He came to court on December 6, 1977.
The FEAA discussed and rejected plaintiffs contentions of duress and reduction in rank. Plaintiff then, and now, relies on Roskos v. United States, 213 Ct. Cl. 34, 549 F. 2d 1386 (1977). There are certain differences in the facts of the two cases. Among those differences is the fact that Roskos was subjected to a proposed adverse action for alleged misconduct not present in the instant case. While those charges were dropped, he was given a disadvantageous transfer which the court held "had no solid or substantial basis in personnel practice or principle” and was an improper effort to pressure plaintiff to retire. Here, on the other hand, the FEAA held that there are no punitive overtones, that plaintiffs conduct was not challenged by any charges brought against him, that there was a genuine, *690 independent need for the Atlanta position, that plaintiffs qualifications fit the position, and that the transfer was in the best interests of the service and was not a disciplinary action in disguise. Concluding, therefore, that there was a proper operational need for the transfer, the FEAA rejected plaintiffs claim of rank reduction. The opinion pointed out that under FPM Supp. 752-1, § Sl-4 (Oct. 11, 1976), supervisory duties are not intrinsically of higher rank than technical, professional, or planning duties. The time-pressure argument was given no weight. Plaintiff was put on notice of the transfer on February 25, 1976. He did not submit his application for retirement until March 20, effective April 10, 1976. He had plenty of time to consider the situation, to make any inquiries appropriate about his status, and to choose between the alternatives of transfer or retirement. McGucken v. United States, 187 Ct. Cl. 284, 407 F. 2d 1349, cert. denied, 396 U.S. 894 (1969). The fact that the alternatives were unpleasant to plaintiff did not make for duress. Employee resignations are presumed to be voluntary, but the presumption may be overcome. It was not overcome, in the opinion of the FEAA. Duress is not measured by an employee’s subjective evaluation of a situation. Christie v. United States, 207 Ct. Cl. 333, 518 F.2d 584 (1975). It is only if plaintiffs transfer was an adverse action, such as a rank or pay reduction, that those sections of the statute come into play, requiring 30 days’ written notice, answers in writing to the proposed action, and other procedural safeguards. 5 U.S.C. §§ 7511, 7512; 5 C.F.R. § 752.202.
Plaintiff has mounted an attack on the transfer as an invalid discretionary order because the position in Atlanta was long left unfilled after he rejected it. He also suggests that the duties of the position were of no real consequence. The court is in a poor position to second-guess the Regional Administrator about the needs of his office or to intervene in administrative actions not demonstrated to have been taken in bad faith. We decline to do so here. Defendant was complimentary of plaintiffs experience and of his technical abilities, except as a supervisor, and gave him adequate time to make a decision about defendant’s perceived needs which involved his services. This is incompatible with an effort to force plaintiff out. The offer would have preserved *691 his grade and pay and, we believe, his rank, although the positions were so different in their functions that any judicial attempt to compare them for purposes of rank is not without its perils. In such situations we must defer to those responsible for the discharge of the public business concerned. The overriding criteria in determining comparability of positions in a reassignment are grade and pay. Comberiate v. United States, 203 Ct. Cl. 285 (1973). Whether rank can be measured by the potential loss óf the esteem of one’s co-workers is too subjective for consideration here. Transfer of bank examiners is routine. Plaintiff is not the only employee in the Atlanta region to have been transferred. Administrators must have some leeway in taking actions to improve the efficiency of their offices. There may be room for honest disagreement as to the merit of some of those decisions, but that does not make them illegal, even if they are unwise. In this particular case, plaintiff actually suffered no reduction in rank by the proposed transfer, for no transfer took place which would have triggered such a reduction, even if there were any merit to such a claim. Plaintiffs retirement pre-empted the transfer and was voluntary and induced, in our opinion, not by the potential of a change in his rank but by his attachment to his home and personal responsibilities in Orlando. This did not require any adverse action procedures, such as mentioned above. FPM Supp. 752-1, § Sl-2 (Oct. 11, 1976).
We do not find it necessary to reach any of plaintiffs other arguments. We have examined his authorities and do not find them helpful to his case on its facts. The court regrets to see a Government employee with a long and honorable record of public service terminate it in bitterness. But, he is not the victim of punitive action. Nothing that has happened here casts any reflection or taint upon plaintiffs record, conduct, or abilities. He is just not entitled to prevail as a matter of law.
it is therefore ordered, upon consideration of the pleadings, the motion and briefs, and the administrative record, without oral argument, that defendant’s motion for summary judgment is granted. The petition is dismissed.