Richard E. BENTON

v.

The UNITED STATES.

No. 304–83C.

United States Claims Court.

Dec. 3, 1984.

Norman H. Singer, Washington, D.C., for plaintiff; Sundlun, Scher & Singer, Washington, D.C., of counsel.

Jane W. Vanneman, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant; Major Curtis Bentz, Dept. of the Air Force, Washington, D.C., of counsel.

## OPINION

LYDON, Judge.

This civilian pay case comes before the court on defendant's motion for summary judgment and plaintiff's opposition thereto. The questions at issue arise from the decision of the Federal Employee Appeals Authority (FEAA) affirming the decision of the Department of the Air Force, 302d Special Operations Squadron, Air Force Reserves, Luke Air Force Base, Arizona (AFRES) which removed plaintiff from his position as Flight Instructor (Helicopter) (Air Reserve Technician), effective November 16, 1977. The critical issue, as framed by the parties in this case, is whether plaintiff's request for disqualification from aviation service was voluntary or the result of improper agency action. After due consideration of the briefs of the parties, and following oral argument, the court concludes that defendant's motion for summary judgment should be granted.

## I.

By letter of notification dated July 28, 1977, plaintiff was directed to appear before the Flying Evaluation Board (FEB) which was to convene the following month. The FEB was to consider evidence concerning plaintiff's professional qualifications as a pilot, which had come under question. This notice advised plaintiff of his rights, including his right to counsel and his right, as per AFR 35–13, ¶ 2–116(3), to submit an application for voluntary disqualification from aviation service in lieu of FEB action. The notice also included a copy of AFR 35–13 for plaintiff's information and use. It is undisputed that this notice complied with all procedural requirements. Prior to receipt of this notice, plaintiff had submitted a number of applications for employment elsewhere since he had been thinking about leaving his present position.

After receipt of this notice on August 1, 1977, plaintiff responded to the Recorder of the FEB, then Major (presently Lt. Colonel) Robert A. Miranda (Miranda) that he had received the notice and that he would appear before the FEB. He requested that the hearing be delayed one week until August 31, 1977, for preparation purposes. In his letter, plaintiff also requested Miranda to arrange for the appearance of ten listed witnesses. In addition, he also stated that he did not need the board's assistance in acquiring military counsel and he informed the FEB that he did not intend to request voluntary disqualification in lieu of FEB action.

Sometime after receipt of the above-mentioned notification, plaintiff secured the services of Captain Charles R. Stubblefield (Stubblefield), Area Defense Counsel at Luke Air Force Base, as his legal counsel. Plaintiff and his counsel began to develop a defense to the action proposed by the July 28, 1977, notice. During the period leading up to the FEB hearing, plaintiff communicated or met with Miranda several times. In addition to being in charge of FEB administrative duties, Miranda was also charged with the responsibility of becoming familiar with all aspects of any proposed FEB action. *See* AFR 35–13, ¶ 3–45(a)(2) (1976).

During the period leading up to the FEB hearing, plaintiff was fully aware of his

option to submit a voluntary disqualification. On August 30, 1977, plaintiff, and his counsel met with Miranda to discuss the case and plaintiff's alternatives. At this meeting plaintiff testified that Miranda explained the pros and cons of submitting a voluntary disqualification or appearing before the FEB. Plaintiff also testified that Miranda never suggested that he sign such a voluntary disqualification. During the discussion of voluntary disqualification, Miranda explained the ramifications of submitting a voluntary disqualification which included loss of plaintiff's Air Reserve Technician position. Miranda advised plaintiff that if he submitted a voluntary disqualification, the AFRES would do all it could to assist plaintiff in finding another non-flying government position.

 Plaintiff's attorney was aware that Miranda had no authority to bind the Air Force to an obligation to find plaintiff a new position. However, plaintiff's counsel, based on his client's dissatisfaction with his present job, and Miranda's offer of assistance in locating another job, recommended that plaintiff submit a voluntary disqualification in lieu of FEB action. Plaintiff now seeks to impugn the competency of his counsel for recommending such a course of action. There is absolutely no basis in the record or elsewhere for the assertion by plaintiff that his counsel was inadequate.[1] Following consideration of his options and the recommendations of his counsel, plaintiff decided, on or about August 30, 1977, to submit a voluntary disqualification request. In this request, plaintiff stated in pertinent part:

f. Reasons for requesting disqualification are: I am submitting this application for voluntary disqualification for Aviation Service in lieu of Flying Evalua-

tion Board action. I recognize that I have encountered difficulties during the last two and one-half years and that it would be in the best interests of the unit to submit this application. However, at no time have I ever knowingly violated any safety regulation. Family considerations and former health problems have influenced this decision. Attached are letters and statements referencing my rated career.

Plaintiff's request for disqualification was reviewed by higher authority at Air Force headquarters located at Randolph Air Force Base, Texas. Final approval was given to plaintiff's request on September 27, 1977. Notice of plaintiff's proposed removal from the flying instructor position dated October 14, 1977, was thereafter sent to plaintiff. Removal was based on the fact that such a request for voluntary disqualification extinguishes aviation status which was a requirement for plaintiff's flying instructor position. Plaintiff has never disputed the fact that loss of that qualification mandates removal from his position. Plaintiff's removal was to be effective November 16, 1977.

On November 2, 1977, 35 days after plaintiff's request for disqualification was approved, plaintiff timely filed his response to the October 14, 1977, Notice of Proposed Action to remove him from his position. Plaintiff requested that his August 30, 1977, application be withdrawn on the grounds that his request for disqualification from aviation service had been made involuntarily and was the product of misrepresentation by AFRES.

In a letter dated November 11, 1977, Lt. Colonel Peter T. Pomonis (Pomonis) advised plaintiff, after consideration of the

---

1. It should also be noted that plaintiff voluntarily chose his counsel. Thus he should not be heard to assert that the counsel's actions did not reflect his desires. *See Johnson v. Department of the Treasury*, 721 F.2d 361, 365 (Fed.Cir. 1983). Plaintiff testified before the FEAA that his counsel was not assigned to him. Instead, plaintiff sought out the counsel who represented him. This is corroborated by plaintiff's letter of July 28, 1977, responding to the letter of notifi-

cation. In that letter, plaintiff stated that he did not desire the assistance of the board in obtaining military counsel. Based on the above rule and the lack of evidence regarding the inadequacy of plaintiff's counsel, the court rejects any claim for relief based on this theory. In any event, since this issue was not raised at the administrative level, it is not properly before the court at this time. *See Lizut v. United States*, 717 F.2d 1391, 1396 (Fed.Cir.1983).

October 14, 1977, Notice of Proposed Action and plaintiff's November 2, 1977, reply thereto, that he felt the evidence concerning his voluntary disqualification request warranted plaintiff's removal to promote the efficiency of the service. In this letter Pomonis also advised plaintiff of his right to appeal this decision to the Civil Service Commission. On November 16, 1977, plaintiff received Notification of Personnel Action, effective November 16, 1977, removing him from his position as Flight Instructor. The record indicates that plaintiff was reemployed by the Air Force as a Training Technician at Reese Air Force Base in Texas, on October 10, 1978, and was thereafter continuously employed by the Air Force as of early 1984.

Plaintiff filed an appeal of the November 16, 1977 removal action with the United States Civil Service Commission, Federal Employee Appeals Authority (FEAA). Plaintiff alleged that his application for voluntary disqualification from aviation service was submitted under duress and was not voluntary. Specifically, plaintiff alleged that then Major Miranda, in his capacity as FEB recorder, had guaranteed that another position would be located for him which would preserve his civil service status if he submitted a voluntary disqualification in lieu of FEB action. He maintained that no such efforts to find him another job were made and that he would not have signed the disqualification without the guarantee he felt Miranda had made.[2]

The FEAA held a hearing on the issue and subsequently issued its decision affirming the removal of plaintiff. The FEAA concluded:

> On review, we find the proximate cause of appellant's removal was his failure to meet the requirements of that position [*i.e.*, he voluntarily disqualified himself] and that such failure was a result of appellant's voluntary actions free from duress or coercion. [*United States Civil Service Commission, Federal Employee Appeals Authority, Appeal of Richard E. Benton,* Decision No. SF752B80344 at 5 (June 26, 1978).]

On May 13, 1983, plaintiff filed suit in this court contending that the decision of the FEAA affirming his removal as a Flight Instructor (Air Reserve Technician) was contrary to the evidence and the reasonable inferences that should be drawn from the evidence. Specifically, plaintiff claims that the finding of the FEAA that plaintiff's submission of his disqualification request was voluntary and free from duress or coercion is contrary to the evidence of record. In his brief, plaintiff contends that the FEAA's decision was arbitrary, capricious, an abuse of discretion, and not supported by substantial evidence.

## II.

■ It is well settled that judicial review of administrative actions in the civilian pay area is limited. The court's inquiry is whether the administrative action is "illegal because it violates applicable statutes or regulations, or is demonstrably in bad faith or malicious because it is arbitrary, capricious, or devoid of substantial evidence to support it." *Wathen v. United States,* 208 Ct.Cl. 342, 351, 527 F.2d 1191, 1197 (1975), *cert. denied,* 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976). *See also Howatt v. United States,* 228 Ct.Cl. 511, 516, 657 F.2d 1204, 1208 (1981) (substantial evidence standard); *Gaskins v. United States,* 227 Ct.Cl. 563, 566 (1981) (review limited to determination of "prejudicial procedural error and whether the action was taken according to law and regulations, was supported by substantial evidence, had a rational basis and was in good faith"). The court does not sit in cases such as this

---

**2.** The FEAA found that efforts were in fact made to find plaintiff another position. The record contains a great deal of evidence supporting this finding. See the testimony and statement dated January 24, 1978 of Walter James Majcher of the Civilian Personnel Liaison Office, Bergstrom Air Force Base; letter dated November 2, 1977 from Lt. Colonel Peter T. Pomonis to plaintiff; testimony of Major Miranda and Frank Reid. Based on this evidence in the record, the court concludes that the above finding by the FEAA was supported by substantial evidence.

as "a super Civil Service Commission." *Sexton v. Kennedy*, 523 F.2d 1311, 1314 (6th Cir.1975), *cert. denied, Sexton v. Simon*, 425 U.S. 973, 96 S.Ct. 2171, 48 L.Ed.2d 796 (1976). Additionally, it is presumed that administrative actions are taken in good faith, and indeed, it takes irrefragable proof to overcome this presumption. The burden is on the plaintiff to do so. *See Wathen v. United States, supra,* 208 Ct.Cl. at 351, 527 F.2d at 1197, *Morelli v. United States,* 177 Ct.Cl. 848, 858 (1966); *Knotts v. United States,* 128 Ct.Cl. 489, 492, 121 F.Supp. 630, 631 (1954). *See also Poschl v. United States,* 206 Ct.Cl. 672, 692 (1975) (burden of proof on plaintiff to show deficiencies which would justify reversal of administrative decision).

■■■ In reviewing an administrative action, the court generally bases its determination solely on review of the administrative record and will not consider evidence produced for the first time in a court proceeding when such evidence was available during administrative proceedings. *See Brousseau v. United States,* 226 Ct.Cl. 199, 210, 640 F.2d 1235, 1242 (1981); *Leefer v. United States,* 215 Ct.Cl. 1061, 1062, 578 F.2d 1388 (1978). *See also Lizut v. Department of the Army,* 717 F.2d 1391, 1396 (Fed.Cir.1983) (permitting new evidence, after the administrative record is completed, would undermine the integrity of the administrative process); *Hayes v. Department of the Navy,* 727 F.2d 1535 (Fed.Cir.1984). In this case plaintiff has submitted affidavits in support of his claims in this court, which contain matters which were not presented to the FEAA. The matters contained in these affidavits,

deal with proposed evidence that was available to plaintiff during the administrative proceeding. The court refuses now to consider any matters not presented, as they should have been in the first instance, to the administrative body. Such action by the court has ample support in case law. *See Brousseau v. United States, supra; Leefer v. United States, supra. See also Monroe Garment Co. v. United States,* 203 Ct.Cl. 324, 343–44, 488 F.2d 989, 1000–01 (1973); *Northbridge Electronics v. United States,* 195 Ct.Cl. 453, 463, 444 F.2d 1124, 1130 (1971). Therefore, the court grants defendant's concurrent motion to strike paragraphs 1 through 9 of plaintiff's affidavit (paragraph 10 of said affidavit is directed at defendant's laches defense which has been pretermitted by the court's declination to base its decision on said defense) and to strike the entire affidavit of Charles R. Stubblefield, plaintiff's attorney.[3]

Given the above-stated standard of review and the evidentiary limitation discussed above, the court now considers plaintiff's claim that the FEAA decision that his disqualification request was "free of coercion, duress, time pressure or intimidation" was arbitrary, capricious, and unsupported by the evidence. The FEAA affirmed the decision of the Air Force to remove plaintiff after a thorough review of the record which included the testimony of plaintiff, his counsel, and several other witnesses. Before the FEAA, plaintiff had the opportunity to call all the witnesses he felt would help his case. In this regard, it is important to note that the issue before

---

**3.** It should be noted that after reviewing these affidavits, the court concludes that consideration of the evidence contained therein would not alter, in any event, the result in this case. The court recognizes the rule of *Wyatt v. Madden,* 32 F.2d 838, 389 (D.C.Cir.1929), as cited by plaintiff, relative to use of affidavits in summary judgment cases. The *Wyatt* case, however, is inapposite since it did not involve judicial review of an administrative decision where such review is generally restricted to the administrative record as discussed previously in the text of this opinion. Moreover, plaintiff's counsel conceded at oral argument that he did not need

these affidavits to prove the position advanced in plaintiff's briefs.

Plaintiff implicitly argues that it is improper for the court to consider defendant's affidavits in support of its laches defense if the court rejects his affidavits. The court rejects this argument. Defendant's affidavits were submitted in support of a legal defense which arose *after* the FEAA proceedings. This defense could not have been raised at the FEAA hearing and therefore, it would be proper for the court to consider defendant's affidavits if it were necessary to do so. *See Brousseau v. United States,* 226 Ct.Cl. 199, 640 F.2d 1235 (1981).

the FEAA was not the validity of the allegations in the FEB notice regarding performances of plaintiff's flying duties. The basic issue raised before the FEAA and in this court by the plaintiff is that his disqualification request was coerced by then Major Miranda by promises that the AFRES would find him another non-flying position. Plaintiff contends that the FEAA's decision to the contrary is not supported by the record.

The court has thoroughly reviewed the Reconstructed Administrative Record submitted to the court.[4] This record includes a transcript of the hearing before the FEAA. There was a great deal of testimony concerning the August 30, 1977, meeting between plaintiff, his counsel and Miranda. There was conflicting testimony concerning the nature of Miranda's assurances to plaintiff regarding assistance in acquiring another federal job. Miranda and plaintiff's counsel testified that it was an offer of assistance only and not a promise or guarantee. Both testified that they knew Miranda did not have the authority to bind the Air Force to such an obligation. Plaintiff, however, testified that he thought the assurances made by Miranda amounted to a guarantee. Plaintiff stated in his request to withdraw his letter of disqualification that he would not have disqualified himself without such a guarantee. Plaintiff's counsel during oral argument conceded, however, that an actual guarantee of employment was not given to plaintiff.

■ Clearly, there is conflicting testimony in the record concerning what occurred at that August 30, 1977 meeting. The general rule is that in reviewing a record in which there exists a conflict in testimony the court will defer to the finding of the hearing officer or board. *See Burke v. United States*, 230 Ct.Cl. 853, 856 (1982); *Palmer v. United States*, 229 Ct.Cl. 650, 652 (1981); *Korman v. United States*, 199 Ct.Cl. 78, 462 F.2d 1382 (1972). When dealing with conflicting testimony, the decision-maker must consider the credibility of the witnesses. The Court of Claims in the *Burke* case, *supra*, stated: "Where a board decision is based on the credibility of testifying witnesses, this court will not reverse unless the accepted testimony is inherently improbable or discredited by undisputed testimony." *Burke v. United States, supra*, 230 Ct.Cl. at 856 (citing *Highway Products, Inc. v. United States*, 208 Ct.Cl. 926, 938, 530 F.2d 911, 918 (1976)). Such deference is based on the administrative decision-maker's ability to observe witness demeanor. *Burke v. United States, supra*, 230 Ct.Cl. at 856–57; *N.L.R.B. v. Walton Mfg. Co.*, 369 U.S. 404, 408, 82 S.Ct. 853, 855, 7 L.Ed.2d 829 (1962). Further, inferences such as plaintiff seeks in this case are more properly for the FEAA to draw, or determine, rather than plaintiff or the court. *See Arundel Corp. v. United States*, 207 Ct.Cl. 84, 93 n. 8, 515 F.2d 1116, 1121 n. 8 (1975).

■ Plaintiff has not demonstrated that the testimony on which the FEAA's decision was based was "inherently improbable or discredited by undisputed evidence." Nor has plaintiff shown that the testimony and evidentiary materials relied upon by

---

4. On January 17, 1984, defendant moved for leave to file a reconstructed administrative record and for an order waiving reproduction requirements with respect to the record. The original appeal file could not be located by the San Francisco Regional Office of the MSPB (the FEAA's successor agency). The Air Force was also unable to find its appeal file. The Air Force advised that the file was destroyed in early 1983 pursuant to its policy of destroying files four years after a case is closed. Parenthetically, plaintiff's delay in filing suit in this court may have contributed to the fact that these records were destroyed.

Defendant's motion to file the reconstructed record was not opposed by plaintiff. This motion was allowed by the court on February 15, 1984. The court, under such circumstances, has carefully scrutinized this record and finds it adequate for reviewing the FEAA's decision on a substantial evidence basis. In addition to the completeness of the record, the court finds the fact that the parties worked together to reconstruct the record indicative of its adequacy. Included in these efforts was contact with plaintiff's prior counsel and acquisition from him of the complete transcript of the FEAA hearing as well as other documentation associated with the FEAA hearing.

the FEAA did not constitute substantial evidence upon which the FEAA could base its findings. *See Burke v. United States, supra,* 230 Ct.Cl. at 857; *Whirlpool Corp. v. Occupational Safety and Health Review Comm'n.,* 645 F.2d 1096, 1101 (D.C. Cir.1981); *Consolidated Edison Co. v. N.L. R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938) (defining substantial evidence to mean the amount of evidence which a reasonable mind might accept as adequate to support a conclusion). After reviewing the record, the court is convinced that the FEAA not only based its decision on the credibility of the witnesses, but it also had substantial evidence to conclude that plaintiff's submission of his voluntary disqualification in lieu of a FEB hearing was indeed voluntary and not the product of coercion.[5]

■ Plaintiff raises several other points upon which he believes the FEAA erred. The plaintiff claims that the FEAA erred in not finding an enforceable contract between the Air Force and plaintiff obligating the Air Force to find plaintiff another federal position. In addressing this argument it is clear that all parties were aware that the Air Force was under no obligation to find plaintiff another position. Additionally, plaintiff's counsel and Major Miranda were both aware that the Major did not have the authority to bind the Air Force to an obligation to find plaintiff a job. This fact combined with the rule that individuals who are damaged as the result of the unauthorized acts or representations of government agents may not recover from the government precludes plaintiff from asserting any type of contractual claim. *See Thanet Corp. v. United States,* 219 Ct.Cl.

75, 85, 591 F.2d 629, 635 (1979); *Jackson v. United States,* 216 Ct.Cl. 25, 41–42, 573 F.2d 1189, 1197 (1978); *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 383–85, 68 S.Ct. 1, 2–3, 92 L.Ed. 10 (1947).

■ There is another ground upon which plaintiff's contractual claim can be denied. "[I]t is well established that the federal employment relationship is a statutory rather than contractual one." *Schuhl v. United States,* 3 Cl.Ct. 207, 212 (1983). *See also Connolly v. United States,* 1 Cl.Ct. 312, 314, 554 F.Supp. 1250, 1253 (1982) *aff'd in part and rev'd in part,* 716 F.2d 882 (Fed.Cir.1983) *cert. denied,* — U.S. ——, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984); *Kania v. United States,* 227 Ct.Cl. 458, 464–65, 650 F.2d 264, 268, *cert. denied,* 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981). Therefore, the rights of federal civilian and military employees "do not turn on contract doctrines 'even where compacts are made.' " *Schuhl v. United States, supra,* 3 Cl.Ct. at 212 (citing *Kania v. United States, supra,* 227 Ct.Cl. at 465, 650 F.2d at 268; *Abel v. United States,* 219 Ct.Cl. 574, 576 (1979)). Such conclusions negating any contractual claim also negate many of plaintiff's other allegations of error which are premised on the existence of a contractual agreement between plaintiff and the Air Force.

One such claim of error based partially on the existence of an enforceable agreement between plaintiff and the Air Force is his claim that the AFRES engaged in time pressure causing plaintiff to submit his disqualification request hastily. There are several bases upon which to reject this claim. One, the record clearly indicates that plaintiff was made aware of the volun-

---

5. Plaintiff, as stated earlier, testified that Major Miranda *"never* suggested that I sign a voluntary statement." (emphasis added). Plaintiff testified that Miranda did explain the pros and cons of the matter. (*Id.*) The court finds that such testimony clearly demonstrates that no coercion was utilized to force plaintiff to submit a voluntary disqualification. Plaintiff clearly had a choice in the matter.

The court finds that this point of error, *i.e.,* use of coercion and duress, raised by the plaintiff is characteristic of most of those raised by

him. Regarding all of the alleged errors in the FEAA's findings raised by plaintiff, he has not shown the lack of substantial evidence necessary for this court to abandon its deference to the FEAA's findings. In fact, a thorough review of the record by the court exposes substantial evidence for all of the FEAA's conclusions. This determination, combined with the court's other bases for rejecting points of error cited by the plaintiff, *infra,* supports the court's granting of defendant's motion for summary judgment.

tary disqualification option one month before the FEB hearing. Therefore, plaintiff had ample time to consider the option. Two, plaintiff and his counsel had the ability to ask for a further rescheduling of the FEB hearing if such was necessary, but failed to do so. In this regard, it is noted that plaintiff did request a one-week delay, until August 31, 1977, relative to the start of the FEB hearing and it was granted. Three, plaintiff claims that if he had more time he could have confirmed the agreement entered into by Major Miranda. This argument ignores the fact that plaintiff had no actual agreement and is charged with the knowledge that Miranda had no authority to enter into such an agreement. *See Federal Crop Ins. Corp. v. Merrill, supra.*

 The court will not consider plaintiff's claims based on fraud, deceit, and negligent misrepresentation. These claims are based on issues raised for the first time in this court and thus reflect plaintiff's failure to exhaust available administrative remedies applicable thereto. *See Lizut v. Department of Defense, supra,* 717 F.2d at 1396 (citing *Haynes v. United States,* 190 Ct.Cl. 9, 12–13, 418 F.2d 1380, 1383 (1969)). *See also Grover v. United States,* 200 Ct.Cl. 337, 343–47 (1973). Moreover, a close review of the record in this case reveals no indication of any factual basis supportive of such empty allegations. Finally, plaintiff's attacks on the good faith of various Air Force officials run afoul of the presumption that public officials properly perform their duties in good faith. Plaintiff has failed to rebut that presumption in this case. *See Knotts v. United States, supra,* 128 Ct.Cl. at 492, 121 F.Supp. at 631. In particular, plaintiff's counsel emphasized at oral argument that Major Miranda deceived plaintiff in that he did not inform plaintiff that no AFRES positions would be open to him. This allegation flies in the face of the above presumption of good faith. Miranda's statement, dated September 27, 1977, indicates that he told plaintiff that AFRES channels would be closed to him. The court finds no evidence to the contrary in the record. The court also notes that this issue of misrepresentation was not raised before the FEAA.

 It is not unreasonable to consider plaintiff's request for disqualification as analogous to resignation notices by federal civilian employees. Whether or not plaintiff's disqualification request was voluntary is a question of fact. *See McGucken v. United States,* 187 Ct.Cl. 284, 288, 407 F.2d 1349, 1351, *cert. denied,* 396 U.S. 894, 90 S.Ct. 190, 24 L.Ed.2d 170 (1969). The FEAA's factual determination that plaintiff's request for disqualification was voluntary is supported by substantial evidence. It is not the function of the court to substitute its judgment on this matter for that of the employing agency where the decision by the agency was reasonable and supported by substantial evidence. *See McCormack v. United States,* 209 Ct.Cl. 778, 779–80 (1976). Plaintiff had freedom of choice in submitting his disqualification request and he was not coerced into doing so. *See Tilk v. United States,* 225 Ct.Cl. 684, 686–87 (1980); *Vitkus v. United States,* 220 Ct.Cl. 623, 625–26, 618 F.2d 121 (1979); *Long v. United States,* 219 Ct.Cl. 687, 690, 618 F.2d 120 (1979). *McGucken v. United States, supra,* 187 Ct.Cl. at 289, 407 F.2d at 1351. Further, no mental illness is alleged or proven which would restrict plaintiff's freedom of choice and thus render his disqualification request involuntary. *Compare Manzi v. United States,* 198 Ct.Cl. 489, 492–93 (1972). Plaintiff has failed to carry the heavy burden of establishing that his disqualification request was involuntarily extracted. *See Leone v. United States,* 204 Ct.Cl. 334, 339 (1974).

 Employee resignations, which are deemed analogous to plaintiff's disqualification request, are presumed to be voluntary. Plaintiff has failed to rebut this presumption in this case. Cases involving circumstances more favorable to employees challenging resignations than is present in this case have found courts upholding the voluntariness of said resignations. *See Sampang v. United States,* 227 Ct.Cl. 562,

563 (1981); *Christie v. United States*, 207 Ct.Cl. 333, 338–40, 518 F.2d 584, 587–88 (1975); *Pitt v. United States*, 190 Ct.Cl. 506, 513–18, 420 F.2d 1028, 1032–35 (1970); *Cosby v. United States*, 189 Ct.Cl. 528, 417 F.2d 1345 (1969); *Autera v. United States*, 182 Ct.Cl. 495, 498–500, 389 F.2d 815, 817 (1968). Merely advising plaintiff of alternative courses of action available to him other than facing removal on charges does not constitute coercion or duress or otherwise vitiate the voluntariness of a resignation. *See Shapley v. United States*, 214 Ct.Cl. 783, 785–86, 566 F.2d 1188 (1977); *Popham v. United States*, 151 Ct.Cl. 502, 504–06 (1960). Nor is the fact that a resignation may have been induced by job frustrations or the desire for a different job sufficient to vitiate a voluntary resignation. *See Parker v. United States*, 230 Ct.Cl. 974, 975–76 (1982).

It is noted that there is case law which grants an individual the right to withdraw his or her resignation before its effective date. *See Cunningham v. United States*, 191 Ct.Cl. 471, 423 F.2d 1379 (1970); *Goodman v. United States*, 424 F.2d 914 (D.C. Cir.1970). In this case, it is undisputed that plaintiff requested withdrawal of his resignation (voluntary disqualification) prior to the effective date of his removal. Based on *Cunningham*, defendant's refusal to accept plaintiff's request to withdraw his request might suggest that these facts provide a basis for awarding plaintiff the relief he is seeking. Neither party discussed this suggestion in their briefs.

■ However, the facts in this case are clearly distinguishable from *Cunningham*. In *Cunningham*, the plaintiff was denied any type of hearing on the voluntariness of her resignation. In this case, plaintiff was given a hearing on that issue before the FEAA. Such an opportunity was fully explained in Lt. Col. Pomonis' November 11, 1977, letter to plaintiff denying plaintiff's request to withdraw his voluntary disqualification.

Additionally, the regulations involved in this case, differ from those present in *Cunningham*. The pertinent regulation in this case, AFR 35–13 Section C ¶ 2–11(c) (1976) states:

> c. Voluntary Termination of Aviation Career Status. A rated officer may request termination of aviation service career status. This paragraph establishes an officer's prerogative to request voluntary disqualification for aviation service; however, it must be clearly understood that the request is approved only when such action serves the best interest of the Air Force, and that disqualification, once approved, is *permanent*. (Emphasis supplied).

This regulation indicates that once a request for voluntary disqualification is *approved* it is permanent. *See Kestner v. United States*, 229 Ct.Cl. 772, 774–75 (1982). In this case the voluntary disqualification was approved on September 27, 1977, making it permanent. Plaintiff's only recourse at that time appears to be; one, a request for withdrawal of the request for voluntary dismissal, and two, if denied, an appeal to the Civil Service Commission. These procedural guidelines were complied with.

It should also be added that *Cunningham* is factually distinguishable from this case in another way. In *Cunningham v. United States, supra*, 191 Ct.Cl. at 473, 423 F.2d at 1380, the plaintiff resigned completely from her position at Wright Air Development Center, Wright-Patterson Air Force Base, Ohio. In her resignation letter she dictated when its effective date would be. 191 Ct.Cl. at 473, 423 F.2d at 1380. She subsequently attempted to withdraw her resignation prior to the effective date when she would be completely removed from her position. In this case, plaintiff submitted a request for voluntary disqualification from *aviation service*. Such a request was an option presented to the plaintiff by the regulations and once it was approved he could no longer fly. The date of approval of this "resignation" from aviation service in this case is therefore equivalent to the effective date of the plaintiff's resignation in *Cunningham*.

The effective date, *i.e.*, November 16, 1977, referred to in this case is the date upon which plaintiff would be removed from his Air Force Reserve Technician position of Flight Instructor prompted by plaintiff's voluntary disqualification from aviation service. The November 16, 1977, effective date is not the critical date when analyzing the applicability of the *Cunningham* rule under the particular facts of this case. That date in this case is September 27, 1977, when plaintiff's request for disqualification was approved and became "permanent." Therefore, the rule of *Cunningham* does not alter the court's ultimate conclusion in this case.

Finally, the court, had it been presented with a *Cunningham* type argument by plaintiff, would have an additional basis to reject such an argument based on defendant's failure to accept plaintiff's withdrawal of his request for voluntary disqualification. The only issue raised by the plaintiff at the FEAA proceeding and in this court focused on the voluntariness of his request for disqualification. The plaintiff at no time, either before the FEAA or this court, has raised the issue of this right to withdraw his resignation. Any attempt to raise such an issue, which could have been fully developed at the FEAA hearing, for the first time in this court would rightly be subject to rejection. *See Lizut v. Department of the Army, supra,* 717 F.2d at 1396; *Grover v. United States, supra,* 200 Ct.Cl. at 343–47.

### III.

The court, based solely on a review of the administrative record, concludes that the FEAA decision was supported by substantial evidence and was not otherwise arbitrary, capricious, or an abuse of discretion. Thus the FEAA decision must stand.[6] The court therefore grants defendant's motion for summary judgment, with plaintiff's complaint to be dismissed.

---

**6.** Defendant persuasively argues that plaintiff's claim is barred by the equitable doctrine of laches in that plaintiff waited 4 years and 10 months after the FEAA decision before bringing his claim to this court. Plaintiff's efforts to explain away this period of delay are unpersuasive. Delays of a shorter period of time have been found sufficient to support application of the doctrine of laches. *See Beeny v. United States,* 218 Ct.Cl. 672, 590 F.2d 343 (1978) (delay of 4 years and 3 months); *Smith v. United States,* 209 Ct.Cl. 685, 686–88 (1976) (delay of 31 months). The requisite prejudice to defendant is made out by the fact that, if the defendant has to pay plaintiff his back wages in addition to the salary it paid his replacement, a double payment would result which has long been considered prejudice sufficient to invoke this doctrine of laches. *See Brundage v. United States,* 205 Ct.Cl. 502, 510, 504 F.2d 1382, 1386 (1974), *cert. denied,* 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975); *Grisham v. United States,* 183 Ct.Cl. 657, 663, 392 F.2d 980, 983, *cert. denied,* 393 U.S. 843, 89 S.Ct. 125, 21 L.Ed.2d 114 (1968). However, the court need not, and does not, base its decision on this equitable defense because of its finding that the FEAA decision was supported by substantial evidence and otherwise legally correct.