Franklyn J. HOWATT

v.

The UNITED STATES.

No. 59–80C.

United States Court of Claims.

Aug. 19, 1981.

June D. W. Kalijarvi, Washington, D. C., attorney of record, for plaintiff. Kalijarvi & Delate, Washington, D. C., of counsel.

Gordon A. Jones, Washington, D. C., with whom was Acting Asst. Atty. Gen., Thomas

S. Martin, Washington, D. C., for defendant. Robert A. Reutershan, Dept. of the Navy, Washington, D. C., of counsel.

Before FRIEDMAN, Chief Judge, and BENNETT and SMITH, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

FRIEDMAN, Chief Judge:

The plaintiff in this civilian pay case, a civilian criminal investigator for the Navy, challenges primarily the sufficiency of the evidence supporting his demotion for two charges of misconduct while conducting an investigation. Both parties have moved from summary judgment, and we heard oral argument. On the first charge we conclude that the findings of the Federal Employee Appeals Authority ("Appeals Authority") were based upon an erroneous legal standard, and we remand the case to the Merit Systems Protection Board (the successor to the Appeals Authority) for further findings under the proper standard. We find that the Appeals Authority's decision on the second charge has adequate evidentiary support. If, on the remand, the Board is unable to sustain the first charge, it must then consider whether the second charge alone justifies the demotion.

### I.

The plaintiff was employed as a criminal investigator by the Naval Investigative Service ("Investigative Service"). In 1978, the Investigative Service issued him notice that it proposed to demote him one grade, from Senior Special Agent, GS–12, step 4, to Special Agent, GS–11, step 7, for two items of misconduct in performing an official investigation. The notice of proposed adverse action charged him with

a. Falsification of an official investigation in that . . . you for claimed reasons of expedience did on four occasions affix a jurat [a certificate stating when and before whom an affidavit is sworn] to written statements submitted by a witness thereby making it appear that those statements had been signed and sworn to in your presence by the witness when in fact the witness had not been present when the jurat was affixed nor had he in fact been sworn to the statements in question. Further, that you submitted the statements containing the false jurat as part of your official report of investigation.

b. Misstatement of a material fact during the course of the same investigation . . . in that you officially reported that six (6) subjects of that investigation when requested declined to submit to a permissive search for the purpose of locating criminal evidence, when in fact you had not specifically made such a request of the six (6) subjects.

Following the filing of the plaintiff's written response, the agency sustained both charges and demoted the plaintiff. The plaintiff appealed to the Appeals Authority which, after a hearing, upheld the demotion. On the basis of its findings, the Appeals Authority held that the agency had "complied with all of the procedural requirements of the law and the Civil Service regulations," that "both the charges" against the plaintiff were "sustained by a preponderance of record evidence," and that the "demotion was not arbitrary, capricious, or unreasonable, but was for such cause as will promote the efficiency of the service."

### II.

A. *Charge (a)*:

■ The first charge is that the plaintiff included in four written statements of an informant (Blaylock) a jurat falsely attesting that Blaylock had sworn to the truth of those statements. Implicit in the charge was an allegation that the falsification was intentional. *See Tucker v. United States*, 224 Ct.Cl. ——, ——, 624 F.2d 1029, 1032–33 (1980); *Weinberg v. Macy*, 360 F.2d 816, 819 (D.C.Cir.1965). Proof of the charge requires at the minimum a showing that the plaintiff did not administer the oath in a

form acceptable under Investigative Service procedures.

■ The Appeals Authority did not address this issue. Instead, it merely found that the informant believed that he had not sworn to the statements. Instead of considering whether the plaintiff believed, or had reason to believe, that he had had the informant swear to the statements, the Appeals Authority held that "the crucial point" was that "at least in [the informant's] mind ... he did not swear to the statements." The Appeals Authority thus based its decision on an erroneous legal standard.

■ Even though the Appeals Authority applied the wrong standard, we must affirm the decision if under the proper standard the agency would have reached the same result. *See SEC v. Chenery Corp.,* 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943); *Denton v. Secretary of the Air Force,* 483 F.2d 21, 28 (9th Cir. 1973), *cert. denied* 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974). In this case, the Appeals Authority credited Blaylock's statement in an affidavit the Investigative Service introduced at the hearing that he personally wrote the statements at issue in this case and submitted them to the plaintiff through an intermediary. He stated further that he did not ever "swear that any of [the] statements w[ere] true," and did not "discuss the[ir] contents" with the plaintiff.

Elsewhere in his affidavit, however, Blaylock discussed occasions when he was asked to "raise [his] right hand and swear" to the truth of statements he had made; he described these as instances when he had "sworn to" the truth of statements. This suggests that when Blaylock said in his affidavit that he had not sworn to the statements he gave to the plaintiff he may have meant only that he never went through a formal swearing ceremony. This ambiguity exists because, despite the plaintiff's request, the Investigative Service did not produce Blaylock, a Navy seaman, at the hearing, claiming that to do so was "not administratively practicable."

Since the Investigative Service never required its agents to use a formal swearing ceremony, but instead permitted the use of "[a]ny procedure which appeals to the conscience of the person ... and which binds him to speak the truth," Office of Naval Investigations (ONI) Manual 63–1B, § 1–0505, (10)(a), it is impossible to say on the basis of Blaylock's affidavit that the plaintiff failed to administer the oaths as the plaintiff reported he did.

The government, however, contends that two other items constitute substantial evidence that supports charge (a). The first is an affidavit the plaintiff gave to Navy investigators when they questioned him in London in December 1977. In this affidavit, the plaintiff stated that "[o]n a few occasions" he "assigned a jurat to a statement without [first] confronting the informant," dated the jurat the same date the statement was signed, submitted the resulting document to his "Command Authorities," and only later questioned the informant "regarding the truth of that statement." As an illustration, this affidavit refers to a statement Blaylock wrote and signed on July 27, 1977.

The second item is the plaintiff's statement, made both in his testimony at the hearing and also in his reply to the charges, that he had incorrectly dated the jurats on three of the four statements Blaylock gave him by using the dates the statements were signed instead of the dates they were sworn to. He explained that these mistakes were "clerical errors" on his part, though he conceded that he was not in the habit of writing the wrong dates on statements.

The Appeals Authority, however, did not discuss this evidence or indicate the weight, if any, given to it or to the plaintiff's other statement that he never affixed jurats before statements were sworn to before him.

■ Nor did the Appeals Authority discuss the plaintiff's challenge to the voluntariness of his December 1977 affidavit and its accuracy as a transcription of what he said to his questioners. He testified that he had been summoned to London from his then current post in Iceland, that his ques-

tioners cajoled him with assurances that giving a statement would not harm him, that he did not know he could obtain legal counsel, that his questioners refused his request to type his own statement, and that the final written statement was not in the words he used. The Appeals Authority stated only that it had "examined the record with regard to these contentions and [found] that the appellant signed a statement at the time of the investigation which contained a complete recital of both his Constitutional Rights and his rights under agency regulations." That statement did not adequately discuss the plaintiff's contentions concerning the voluntariness and accuracy of his affidavit.

The plaintiff also argues that his December 1977 affidavit was "not validly obtained," and therefore should not be considered at all. The Appeals Authority rejected the plaintiff's contention that the Investigative Service obtained the affidavit in violation of its own procedural regulations, and we find no reason to reject that conclusion. The plaintiff cites no authority to support his argument that an accused's statement is inadmissible in a civil case unless before being questioned the employee is told that he has the right to remain silent and to have counsel. Moreover, the Naval Investigative Service manuals which the plaintiff contends were ignored are merely guidelines to operating procedures, evidently designed only to instruct investigating agents (such as the plaintiff) on how to obtain evidence for use in criminal proceedings.

In admitting the affidavit, the Appeals Authority concluded, on the basis of record evidence, that it had been obtained voluntarily. On this record, that ruling was justified. *See Green v. United States*, 650 F.2d 285 (1980).

■ "Our review of administrative fact-finding is limited to determining whether substantial evidence supports the determination" of the Appeals Authority. *Jones v. United States*, 223 Ct.Cl. ——, ——, 617 F.2d 233, 236 (1980). We may not independently assess the evidence. "For purposes of affirming no less than reversing" the Appeals

Authority, we "cannot intrude upon the domain which Congress has exclusively entrusted to an administrative agency." *SEC v. Chenery Corp.*, 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943). We therefore remand the case to the Merit Systems Protection Board to reconsider charge (a) in accordance with this opinion. *See Cooper v. United States*, 226 Ct.Cl. ——, 639 F.2d 727 (1980); *McClelland v. Andrus*, 606 F.2d 1278 (D.C.Cir.1979).

### B. Charge (b):

■ The second charge alleges that the plaintiff falsely reported that six Navy crewmen who were suspects in his investigation declined to permit a search. In reporting his interviews with these suspects, the plaintiff wrote that each "refused to," "declined to," or "would not" "submit to a search." The Appeals Authority found the charge sustained by affidavits from each of the six crewmen that the plaintiff never asked permission to search his quarters.

Unlike charge (a), there is no problem here of the agency's use of erroneous legal standards. The sole question is whether there is substantial evidence to support the charge. We hold that there is.

The record shows that in conducting interviews it was the plaintiff's practice that when an interviewee refused to answer questions or requested a lawyer (as the six crewmen here did), the plaintiff would terminate the investigation and treat such response as a refusal also to consent to a search. The plaintiff's reports, however, did not reflect that practice, although they easily could have done so. Instead, they used language that a reasonable person would interpret as indicating that the plaintiff expressly had requested but had been denied permission to conduct a search, namely, that each suspect "refused to," "declined to," or "would not" "submit to a search." Although the plaintiff mistakenly may have believed that his reports properly reflected what happened, the reports themselves did not disclose the true situation. The plaintiff's superiors were entitled to demand and receive completely accurate investigative reports.

In his direct testimony at the hearing, the plaintiff explained his usual practice, and stated that after a suspect said "that he wants to consult with a lawyer before answering any more questions," the plaintiff treated such a request as "preventing a permissive search" and did not "specifically" ask about a consent search of his quarters or his apartment because to "do so would clearly be an effort to coerce him into submitting to a search that he's already told me that he didn't want to submit to." He described as "accurate" the statements of each of the six crewmen in their affidavits "that you did not ask for a search of his living quarters" and stated that he did not so ask because he regarded the crewmen's choice to terminate interrogation as equivalent to "declining to consent to a permissive search." On cross-examination the plaintiff stated that he had "asked" the crewmen "for permissive searches" and stated that he understood that each crewman "want[ed] to talk to [his] lawyer prior to proceeding with the search aspect of the investigation."

In view of the flat statements in each of the six crewmen's affidavits that the plaintiff had not requested consent to a search and the plaintiff's admission on direct examination that those statements were "accurate," the Appeals Authority was not required to accept the plaintiff's contrary statement on cross-examination.

C. We have vacated the Appeals Authority's sustention of charge (a) and remanded the case for the Merit Systems Protection Board to reconsider that charge under the proper standard. If on the remand the Board sustains that charge, the demotion will stand. Plaintiff does not deny that the penalty was appropriate for the two violations found, and in any event we could not say that the Navy abused its discretion in imposing that sanction.

If, on the other hand, the Board should reject charge (a), the question would arise whether charge (b), which we have sustained, itself justifies the demotion. In that event, the Board must either decide that issue itself or remand the case to the

Investigative Service to make that determination.

### III.

The plaintiff's petition includes a request for attorney's fees. Such fees may not be recovered against the United States unless their allowance is specifically authorized by some statute. There is no statute now providing for their recovery in this case. 28 U.S.C. § 2412 (1976). *See Nibali v. United States,* 225 Ct.Cl. ——, 634 F.2d 494 (1980).

It is possible, however, that under the Equal Access to Justice Act, Pub.L. No. 96–481, title II, 94 Stat. 2325 (October 21, 1980), which is effective October 1, 1981, the plaintiff might be entitled to attorney's fees if he prevailed in a decision rendered on or after that date. Of course, we express no opinion on that issue. In the circumstances, however, it would be inappropriate to grant summary judgment for the defendant on that issue, or on the other claims for ancillary relief in the petition. Resolution of those collateral issues is not appropriate at this stage of the case.

### CONCLUSION

The parties' motions for summary judgment are denied without prejudice. The case is remanded to the Merit Systems Protection Board pursuant to 28 U.S.C. § 1491 and Rule 149 for further proceedings in accordance with this opinion. The plaintiff's attorney shall advise the clerk at 90-day intervals of the status of the proceedings on remand, pursuant to Rule 149(f).