# United States Court of Appeals for the Federal Circuit

04-3239

VICTOR P. GRABIS,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Diane A. Seltzer, The Seltzer Law Firm, of Washington, DC, argued for petitioner.

David B. Stinson, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Kathryn A. Bleecker, Assistant Director. Of counsel on the brief was Wade M. Plunkett, Office of Personnel Management, of Washington, DC.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

04-3239

VICTOR P. GRABIS,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

_____

DECIDED:  September 27, 2005

_____

Before MAYER, <u>Circuit Judge</u>, FRIEDMAN, <u>Senior Circuit Judge</u>, and DYK, <u>Circuit Judge</u>.

FRIEDMAN, <u>Senior Circuit Judge</u>.

This case involves an effort by the Office of Personnel Management ("OPM") to recover from a former federal employee civil service retirement annuity payments to him that were proper when made, but were subsequently improperly retained after he received duplicate payments from another source.  The Merit Systems Protection Board ("Board") held that OPM could recover the payments from him.  <u>Grabis v. OPM</u>, No. PH-831M-03-0035-I-1 (M.S.P.B. Mar. 2, 2004 ("Final Decision") and Feb. 20, 2003 ("Initial Decision")).  We affirm.

I

The basic facts are undisputed.  Prior to 1987, petitioner Victor P. Grabis was a federal fire protection inspector at St. Elizabeth's Hospital ("St. Elizabeth's"), the well-

known federal mental health facility in the District of Columbia.  In 1987, the federal government transferred operation and control of St. Elizabeth's to the District of Columbia ("the District").  St. Elizabeth's employees, including Grabis, became District employees, but retained the right to certain federal retirement benefits under the Comprehensive Merit Personnel Act of 1978 (codified in 5 U.S.C. § 8331(1)(G) (2000)).  Initial Decision at 2; Pet'r Br. at 9.

In April 2000, Grabis and several other fire protection inspectors were removed in a reduction-in-force.  As a result, Grabis began receiving, through OPM, a discontinued service annuity from the federal government pursuant to 5 U.S.C. § 8336(d) (2000).

Grabis and the other removed employees challenged their removal in union grievance and arbitration proceedings and in a federal district court suit.  In April 2001, Grabis and the other employees entered into a settlement agreement with the District.  Under the agreement, Grabis was retroactively reinstated as of the date of removal, and also received $73,921, which represented the District's "complete and total back pay liability."  Neither OPM nor any other federal entity was a party to the settlement agreement.

The federal annuity payments Grabis received through OPM during his 2000-2001 separation totaled $29,109.72.  The settlement agreement does not refer to repayment of those annuities to the federal government.  Following the settlement, Grabis returned to work for the District and received no further federal payments until September 2002, when he retired and began to receive federal retirement benefits.

At some point, OPM became aware that Grabis had received back pay from the District covering the same period for which he had previously received discontinued service annuity payments from the federal government. In its reconsideration decision, OPM informed Grabis that when he was retroactively restored to service, he should have set aside $29,109.72 from his back pay award to repay the federal government.

OPM also denied Grabis's request for a waiver of the repayment of the overpayment. It explained:

> After a careful review of the evidence of record, we have decided that you must have known that it was unlawful to receive payments from two government agencies at the same time. Once you arrived at a settlement with the Government of the District of Columbia, you should have set aside the retroactive payment paid by them for the purpose of paying the consequent debt owed to OPM.... As a federal employee, you should have known that you were not entitled to both benefits for the same period of time. Accordingly, we find that you are not totally without fault in this matter. Therefore, you do not meet the requirements of eligibility for waiver under USC § 8346(b), and your request for waiver is denied.

OPM's reconsideration decision also stated: "You have not established that collection of the overpayment will create a financial hardship."

Grabis appealed to the Board. In his initial decision, which became final when the Board denied review, the Board's chief administrative judge affirmed OPM's reconsideration decision. Noting that Grabis "agreed at the hearing that he was overpaid in the amount alleged by OPM," the chief administrative judge ruled that when Grabis was retroactively restored to service, he should have set aside $29,109.72 from his back pay award to repay the federal government, and that "an offset should have been made, but was not, resulting in appellant's receipt of a 'windfall' because he

received [the federal annuity payments] to which he was not entitled." Initial Decision at 4-6.

The judge further stated: "Because the set-aside rule applies here, and because appellant's back pay award exceeded his CSRS annuity payments, neither waiver nor adjustment of the payment schedule are available to appellant. In any event, appellant has liquid assets in excess of $26,000.00, and he owns two homes worth more than $300,000.00; one of which he rents for $1,000.00 per month. Thus, even if I had reached this issue, I would not have found that waiver or adjustment was warranted." Id. at 6 (internal citations omitted).

II

A. Under the settlement, Grabis was retroactively reemployed as of the date he was removed, and received back pay to that date. The result was to put him in the same financial position as if his removal had never occurred. If he had never been removed, however, he would not have received any of the discontinued service annuities he was paid during his temporary separation. See Day v. OPM, 873 F.2d 291, 293 (Fed. Cir. 1989) (stating that "a retirement annuity cannot start until separation from service" and "separation from service [is] nullified by accepting retroactive reinstatement"); Riggs v. OPM, 709 F.2d 1486, 1488 (Fed. Cir. 1983) (stating that "by express provision of 5 U.S.C. § 8345(b)," an "annuity cannot start until [the employee] separates from his civil service position").

Although the annuity payments Grabis received were proper when made, his retention of those payments after his retroactive reinstatement made him ineligible to receive them was improper. Furthermore, his retention of the annuity payments after

receiving back pay from the District covering the same time period constituted double payment and therefore unjust enrichment. Grabis points to no reason why he should be permitted to retain these double payments, and we cannot discern any.

Indeed, Grabis does not contend that he is legally entitled to retain the annuity payments or that, between him and the federal government, he has the superior claim to the money. Instead, his argument is that OPM, in seeking repayment from him, has pursued the wrong person because it should have sought the money from the District. Grabis contends that the District was at fault for not withholding the $29,109.72 he owes the federal government from the amount paid to him under the settlement, or at least for not instructing him to set aside or segregate that amount to have it available to pay the federal government.

Grabis contends that the District's alleged duty to make the offset arose under the Back Pay Act, 5 U.S.C. § 5596, and OPM's regulations implementing it. That Act provides that an employee who "is found by appropriate authority . . . to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of" his pay "is entitled, on correction of the personnel action, to receive" appropriate back pay. 5 U.S.C. § 5596(b)(1)(A)(1) (2000). The regulations upon which Grabis relies deal with offsets to be made against such back pay awards. Grabis states in his brief that his "back pay award was based" on the Back Pay Act and that the total payment he received from the District under the settlement agreement "was made under the provisions of the Back Pay Act." He gives no citations to support those statements.

Nothing in the settlement agreement even suggests, much less indicates or states, that Grabis's award was based on the Back Pay Act. Moreover, there is no indication, that in settling the dispute with the fire protection inspectors, the District "found" that they had been "affected by an unjustified or unwarranted personnel action", as the Back Pay Act requires for coverage. To the contrary, the settlement agreement explicitly states that it "shall not constitute an admission of any wrongdoing or malfeasance" by the District. <u>Settlement Agreement & Stipulated Arbitration Award In the Matter Between D.C. Comm'n on Mental Health Servs. and Am. Fed'n of State, County & Mun. Employees Local 2095</u> (Apr. 25, 2001), at 4, ¶ 5.

There is ample statutory and regulatory authority supporting OPM's right to collect this double payment from Grabis. The Federal Claims Collection Act provides that "[t]he head of an executive, judicial, or legislative agency . . . shall try to collect a claim of the United States Government for money or property arising out of the activities of, or referred to, the agency[.]" 31 U.S.C. § 3711(a)(1) (2000). Department of Justice regulations implementing section 3711 direct that "[e]ach Federal agency shall take aggressive action, on a timely basis with effective followup, to collect all claims of the United States for money or property arising out of the activities of, or referred to, that agency[.]" 4 C.F.R. § 102.1(a) (2000).

OPM's own regulations contain a lengthy section at Title 5, ch. 1, subpt. M, entitled "Collection of Debts," which "prescribes procedures to be followed by [OPM], which are consistent with the Federal Claims Collection Standards . . . in the collection of debts owed to the Civil Service Retirement and Disability Fund." 5 C.F.R.

§ 831.1301 (2004). The regulations define "debt" as "a payment of benefits to an individual in the absence of entitlement or in excess of the amount to which an individual is properly entitled," which seems broad enough to cover the overpayment to Grabis. Id. § 831.1303.

Another OPM regulation, entitled "Collection of erroneously paid retirement benefits," deals with recovery of "an overpayment of annuity" from an "employee [who] is entitled to receive back pay because of [a] canceled separation." Id. § 837.803(c). This last provision appears to explicitly authorize OPM to recover an overpayment from an employee in Grabis's situation.

B. The Board affirmed OPM's reconsideration decision on the ground that "an offset should have been made, but was not, resulting in appellant's receipt of a 'windfall' because he received [the federal annuity payments] to which he was not entitled." Initial Decision at 5. It rejected Grabis's contention that the District's failure to offset precluded OPM from recovering the overpayment from him because "[t]his argument ignores the fact that the (now) erroneously paid CSRS benefits came from the trust fund administered by OPM, not from D.C. Government funds" and that therefore Grabis had the responsibility to "set aside" part of his back pay award to repay the federal government. We have affirmed the Board on somewhat different reasoning: namely, that the District was not required to offset any portion of the settlement and that OPM was authorized to collect the overpayment from Grabis.

The question therefore arises whether our affirmance of the Board is consistent with the principle announced in Securities & Exchange Commission v. Chenery Corp., 318 U.S. 80, 95 (1943), that "an administrative order cannot be upheld unless the

grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." The Chenery principle was designed to prevent reviewing courts from "improperly invad[ing] the administrative province" by deciding issues not addressed by the administrative tribunal. Ward v. Merit Sys. Prot. Bd., 981 F.2d 521, 528 (Fed. Cir. 1992) (quoting Salt River Project Agric. Improvement & Power Dist. v. United States, 762 F.2d 1053, 1061 n.8 (D.C. Cir. 1985)). Although the Board is a quasi-judicial tribunal whose primary role is adjudicating government employment disputes, it is an administrative agency for Chenery purposes. See, e.g., Howatt v. United States, 657 F.2d 1204, 1208 (Ct. Cl. 1981) (applying Chenery principle to the ruling of the Board as successor to the Federal Employee Appeals Authority).

Chenery, however, does not always bar a reviewing court from affirming an agency on a ground different from that on which the agency based its decision. Such affirmance is permissible if "it is clear that . . . the agency would have reached the same ultimate result" under the court's legal theory. Id.; cf. Nat'l R.R. Passenger Corp. v. Boston & Me. Corp., 503 U.S. 407, 419-20 (1992); Howatt, 657 F.2d at 1207 (stating that even though the agency "applied the wrong standard, we must affirm the decision if under the proper standard the agency would have reached the same result"). In other words, Chenery does not apply if there is no room for the agency to exercise discretion in deciding the legal issue under review. See Koyo Seiko Co. v. United States, 95 F.3d 1094, 1100-01 (Fed. Cir. 1996).

In this case, there is no valid basis on which the Board could have reversed OPM's reconsideration decision and allowed Grabis to keep the windfall he received.

Chenery does not preclude our affirmance of the Board's decision on the basis we have given.

III

Alternatively, Grabis contends that OPM should have waived repayment of the overpayment. He invokes 5 U.S.C. § 8346(b), which states that recovery of benefit payments "may not be made from an individual when, in the judgment of Office of Personnel Management, the individual is without fault and recovery would be against equity and good conscience." As this language indicates, OPM has discretion to determine whether to waive recovery of overpayments. See Day, 873 F.2d at 293.

Under OPM's regulations, recovery would be "against equity and good conscience" if, among other things, it "would cause financial hardship to the person from whom it is sought[.]" 5 C.F.R. § 831.1403; Thornhill v. OPM, 69 M.S.P.R. 600, 602 (1996). Grabis contends that recovery of the overpayments he received would cause him financial hardship.

In affirming OPM's rejection of this claim, the chief administrative judge stated: "In any event, appellant has liquid assets in excess of $26,000.00, and he owns two homes worth more than $300,000.00; one of which he rents for $1,000.00 per month. Thus, even if I had reached this issue, I would not have found that waiver or adjustment was warranted." Initial Decision at 5-6. We have no reason to reject that factual determination, which itself suffices to sustain OPM's denial of waiver.

CONCLUSION

The decision of the Merit Systems Protection Board is

AFFIRMED.