NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3133

TOM CARTLEDGE,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Frederic W. Schwartz, Jr., of Washington, DC, argued for petitioner.

Matthew H. Solomson, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent.  With him on the brief were Gregory G. Katsas, Assistant Attorney General, Jeanne E. Davidson, Director, and Todd M. Hughes, Deputy Director.  Of counsel on the brief was Earl A. Sanders, Attorney, Office of the General Counsel, Office of Personnel Management, of Washington, DC.

Appealed from:  Merit Systems Protection Board

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3133


TOM CARTLEDGE,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Petition for review of the Merit Systems Protection Board in AT831M061041-I-2.

_____

DECIDED:  January 15, 2009

_____


Before SCHALL, GAJARSA, and MOORE, Circuit Judges.

MOORE, Circuit Judge.

Petitioner Tom Cartledge appeals the final decision of the Merit Systems Protection Board (MSPB or Board).  Cartledge v. Office of Pers. Mgmt., No. AT831M061041-I-2 (M.S.P.B. Nov. 29, 2007).  Mr. Cartledge receives the survivor benefits of his late wife, who was an employee of the United States Postal Service (USPS).  The Board affirmed the Office of Personnel Management's (OPM) decision that retirement annuity payments made between January 2, 1999, and February 28, 2001, by OPM to Mrs. Cartledge, were an overpayment subject to collection by OPM.  For the reasons set forth below, we reverse and remand.

BACKGROUND

Mrs. Cartledge retired from her service with USPS on January 2, 1999. At that time she elected to receive an annuity "payable only during [her] lifetime." This election meant that no survivor annuity would be paid to Mr. Cartledge in the event of her death. The advantage of this annuity is that the payments are higher relative to an annuity that includes survivor benefits. Mrs. Cartledge further noted on her retirement application that she believed that her retirement was involuntary, and she initiated an MSPB action alleging the same.

Mrs. Cartledge began receiving her annuity payments in due course. In early 2001, Mrs. Cartledge learned that she had terminal pancreatic cancer, which rendered the long-term remedies afforded by her MSPB action considerably less valuable. She settled her dispute with USPS, agreeing to give up her claims. In exchange, USPS devised a way to provide survivor benefits to Mr. Cartledge notwithstanding her irrevocable election to the contrary. In essence, USPS allowed her to re-retire, and thus choose a new form of annuity—one with survivor benefits—further to her new retirement. The settlement agreement, executed April 4, 2001, provided:

> In consideration for the covenants made by Ms. Cartledge herein, the USPS agrees to change the effective date of Ms. Cartledge's retirement from January 2, 1999 to February 28, 2001. Ms. Cartledge will receive no back pay for this period of service. Her record will reflect a last day in pay status of January 2, 1999. She will be carried in a nonpay status from January 3, 1999 to February 28, 2001.

As part of the agreement, Mrs. Cartledge "completed a new retirement application on which she made a survivor annuity election." Specifically, the agreement provides:

> Based on her documentation submitted to date, Ms. Cartledge will be eligible to apply for the Alternative Form of Annuity (AFA)/Lump Sum. Subject to approval from the Office of Personnel Management (OPM), Ms. Cartledge will be entitled to receive in a lump sum payment an amount equal to what she has contributed to the retirement fund. This election of the AFA/Lump Sum will not affect her right to continue to receive a monthly annuity . . . .

In order to correct for the fact that annuity payments are greater in the absence of survivor benefits, the agreement further provides:

> [Mrs. Cartledge's election] will result in a reduction of her monthly annuity retroactive to January 3, 1999 which is the commencing date of her annuity. The reduction will be approximately $269 per month. Ms. Cartledge will be responsible for reimbursing OPM for this reduction in her monthly annuity from January 3, 1999 to the effective date of this Agreement[, April 4, 2001].

The total retroactive reduction (or overpayment) is thus $7,263—the amount that Mr. Cartledge concedes that OPM is entitled to. On May 30, 2001, OPM wrote to Mrs. Cartledge, stating that "[p]er your request to our office dated April 25, 2001, we have complied with your request to process the settlement agreement that changes your retirement date from 1/1/99 [sic] to 2/28/01." Mrs. Cartledge died the next day.

On February 14, 2002, over eight months after Mrs. Cartledge died, OPM sent Mr. Cartledge a somewhat confusing letter indicating that he owed a debt of $73,472.60 that "occurred when annuity benefits were paid to Thelma Cartledge after his/her death. [sic]" OPM offered some clarification over nine months later in a notice of amount due stating that the cause of overpayment was the "[s]ettlement agreement through former agency to change retirement date from 1/2/99 to 2/28/01." Two weeks later, Mr. Cartledge duly filed an informal statement concerning the alleged overpayment, requesting reconsideration and arguing that the settlement agreement limited the repayment to $269 per month and regardless that he should receive a waiver.

Three years later, on December 16, 2005, OPM issued a reconsideration decision clarifying its action. OPM explained that USPS sent it an amended retirement record indicating that Mrs. Cartledge had been restored as an employee as of January 3, 1999, and then separated as of February 28, 2001. Thus, OPM reasoned, because Mrs. Cartledge was an employee during that time, she could not also be an annuitant and was therefore not entitled to any annuity she received prior to February 28, 2001. Further, OPM denied the waiver request under 5 U.S.C. § 8346(b) and 5 CFR § 831.1403.

Mr. Cartledge timely appealed the December 16, 2005 OPM ruling to the MSPB. OPM caused further delay by rescinding its reconsideration decision and moving the Board to dismiss. On August 7, 2006, more than five years after Mrs. Cartledge died, OPM issued a new final decision reaching the same conclusion as before but with some minor changes to the overpayment calculation. Mr. Cartledge promptly appealed again.

In a September 5, 2006 letter brief to the Board, OPM added further detail to its position. In particular, OPM argued that it was not bound by the USPS settlement. It also revised the alleged overpayment to $79,633.60, representing all of the money received by Mrs. Cartledge prior to March 1, 2001. In an attempt to collect the $79,633.60, OPM first seized Mrs. Cartledge's entire lump-sum annuity payment, leaving a balance $16,107.46, which it offered to reduce to $15,600 for settlement purposes.

On July 16, 2007, the Board affirmed the final decision of OPM. Cartledge v. Office of Pers. Mgmt., No. AT-831M-06-1041-I-2 (M.S.P.B. July 16, 2007). The administrative judge (AJ) concluded that the settlement agreement was "nothing more

than an artifice to evade statutory requirements and, consequently, the agreement is not binding on OPM" and ruled that:

> [w]hen Mrs. Cartledge changed her retirement date to 2001, and when she was also allowed to make a new irrevocable election and also allowed to elect an alternative annuity, this established conclusively that she was not entitled to retirement benefits for any date preceding her established retirement date in 2001.

Id. at 4-6. Further, the AJ agreed with OPM that Mr. Cartledge did not meet the requirements for a waiver. Id. at 6-7. The Board denied Mr. Cartledge's petition for review, and the decision became final on November 29, 2007. Mr. Cartledge now timely appeals.

## DISCUSSION

This court must affirm a decision of the Board unless it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c); Hayes v. Dep't of the Navy, 727 F.2d 1535, 1537 (Fed. Cir. 1984). The interpretation of a settlement agreement is reviewed de novo. See Mays v. U.S. Postal Serv., 995 F.2d 1056, 1059 (Fed. Cir. 1993) ("The settlement agreement is a contract, of course, and its interpretation is a matter of law.").

Preliminarily, the government argues that under the clear terms of the settlement agreement, it was entitled to collect the alleged overpayment because Mrs. Cartledge was entitled to none of the payments that she received prior to March 1. We do not agree. The government's position conflicts with the plain terms of the settlement agreement, which required that Mrs. Cartledge pay back only a portion of the payments—$269 for each month between January 2, 1999 and the effective date of the

agreement, which is April 4, 2001. The $269 difference reflects the reduced payments of an annuity that includes survivor benefits. The government disputes that the express terms of the agreement limit Mr. Cartledge's liability to OPM to a total of $7,263 (27 months at $269 per month). It offers two arguments in support of its position—first, that "the settlement agreement does not mention a total amount," and second, that "the settlement agreement contained only an approximation of the amount that would be deducted from the new monthly annuity, thereby placing the Cartledges on notice that OPM would deduct any overpayment." The lack of an express total amount is the obvious product of not knowing the agreement's effective date at the time it was drafted. Furthermore, the use of the word "approximately" prior to "$269 each month" cannot mean that OPM is entitled to collect over ten times the amount stated in the settlement agreement.

The government also argues that because the terms of the settlement agreement gave it the authority "to approve the lump sum," it therefore "necessarily" gave it "the authority to approve the monthly annuity, because the size of the annuity is inextricably tied to the size of the lump sum." The agreement contemplated Mrs. Cartledge receiving part of her annuity in a lump sum, subject to OPM's determination that she met certain statutory requirements. The government erroneously relates two determinations: first, whether, after March 1, 2001, Mrs. Cartledge receives larger monthly payments or a combination of smaller monthly payments and a lump sum payment, and second, whether she can be required to repay all of the annuity payments she received prior to March 1, 2001. The first determination is ministerial, and affects only the timing of payments, not the amount. The second determination is the subject

of this appeal and affects the amount of the payments. OPM's authority to make the first determination gives it no right to contravene the clear terms of the settlement agreement with regard to the second. Accordingly, the settlement agreement limits Mr. Cartledge's repayment to $7,263.

The government next argues that if we construe the settlement agreement as we have, to allow Mr. Cartledge to keep his late wife's annuity payments—as reduced by the terms of the agreement—prior to March 1, 2001, then the settlement agreement is contrary to law and therefore not binding on OPM. See Utah Power & Light Co. v. United States, 243 U.S. 389, 409 (1917) ("[T]he United States is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit."). Although the Board did not set forth what statutory requirements it believed that the settlement agreement evaded, the government contends that the settlement agreement is contrary to 5 U.S.C. § 8345(b)(1), which provides that "an annuity of an employee or Member commences on the first day of the month after—(i) separation from the service; or (ii) pay ceases and the service and age requirements for title to annuity are met." The government focuses on the first part of § 8345(b)(1)(A), arguing that because the settlement agreement changed Mrs. Cartledge's retirement date from January 2, 1999 to February 28, 2001, Mrs. Cartledge was therefore not separated from her service until February 28, 2001. Thus, the government concludes, OPM cannot allow Mrs. Cartledge's annuity to commence until February 28, 2001.

It is, however, the second part of § 8345(b)(1)(A) that governs this case. The government does not dispute that Mrs. Cartledge received no back pay pursuant to the

settlement agreement or pay of any kind after January 2, 1999. Hence, on this day, "pay cease[d]" and Mrs. Cartledge's annuity could commence the first day of the month after. § 8345(b)(1)(A)(ii). The government is correct that in <u>Grabis v. Office of Pers. Mgmt.</u>, 424 F.3d 1265 (Fed. Cir. 2005), we held that retirees cannot collect annuity payments and back pay during the same period of time. Mrs. Cartledge did not receive an annuity and back pay during the same period. Mr. Cartledge is not receiving an unlawful or even unfair windfall. To the contrary, the settlement agreement quite reasonably requires him to return to OPM the difference in payments between Mrs. Cartledge's original annuity and the one selected under the agreement. Because the settlement agreement is fully consistent with § 8345(b)(1)(A)(ii), the government cannot repudiate the agreement by asserting that it is contrary to law.

The government has not established that the settlement agreement is unlawful. As it clearly provides that Mr. Cartledge is liable to OPM for $7,263 and no more, Mr. Cartledge is entitled to all of the annuity payments received by Mrs. Cartledge prior to March 1, 2001, less $7,263. Because the record does not clearly indicate how much money OPM must now return to Mr. Cartledge, we remand to the Board for such a determination. Accordingly, the decision of the Board is reversed and remanded.

COSTS

Costs to petitioner.